DAVID L. NEALE (SBN 141225)
JULIET Y. OH (SBN 211414)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: dln@lnbyb.com, jyo@lnbyb.com, lls@lnbyb.com

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:13-bk-13163-SC |
| EVERGREEN OIL, INC., | Jointly Administered With: Case No. 8:13-bk-13168 |
| Debtor. | Chapter 11 |
| Jointly Administered Debtors And Debtors-in-Possession | |
| Affects: <br> ☐ Evergreen Oil, Inc., Only <br> ☐ Evergreen Environmental Holdings, Inc., Only <br> ☒ All Debtors | **APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY CAPPELLO CAPITAL CORP. AS EXCLUSIVE INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 327 AND 328; DECLARATION OF ROBERT DEUTSCHMAN IN SUPPORT THEREOF** <br><br> [No Hearing Required – Local Bankruptcy Rule 2014-1(b)] |

1

Evergreen Oil, Inc. ("EOI") and Evergreen Environmental Holdings, Inc. ("EEHI" together with EOI, the "Debtors"), the chapter 11 debtors and debtors in possession in the above-captioned, proposed jointly-administered, bankruptcy cases, hereby submit this application (the "Application") to employ Cappello Capital Corp. ("Cappello") as the Debtors' exclusive investment banker, pursuant to 11 U.S.C. § 327 and 328, effective as of April 9, 2013, the date of the filing of the Debtors' bankruptcy cases, upon the terms and conditions set forth in the engagement letter (the "Retention Agreement") between the Debtors and Cappello and as described below. In support of this Application, the Debtors respectfully represent as follows:

**A.    Case Background**

1.    On April 9, 2013 (the "Petition Date"), Evergreen Oil, Inc. ("EOI") filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). EOI is operating its business, managing its financial affairs and operating its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    EOI was founded in 1984 to provide clean and responsible used oil collection for service stations. The company has grown to lead the industry in developing safe and efficient used oil recovery operations while providing other environmental services as a one-stop shop for hazardous waste management and disposal in the State of California.

3.    EOI is one of the largest waste oil collectors in California, and the only oil re-refining operation in the western United States. EOI is also a major provider of hazardous waste services, offering customers across California a full range of environmental services to handle all of their waste management needs. All of EOI's hazardous waste environmental services are geared towards recycling and reuse of materials collected. EOI purchases and recycles oil by using a re-refining process developed by EOI that allows EOI to reclaim three quarts of every gallon that EOI treats. Specifically, EOI collects, transports and recycles the following: (1) used motor oil, for re-refining into lube oil; (2) used oil filters, for recycling; (3) oily water, for treatment and safe disposal; (4) used antifreeze, sent to offsite recyclers for re-use; and (4) other solid and toxic waste, sent to offsite authorized disposal sites.

4.     Prior to the bankruptcy filing, EOI experienced a fire which severely damaged some of EOI's operating equipment. Due to the fire and for other reasons EOI's cash flow was hampered making it difficult for EOI to operate. In order to resolve EOI's cash flow predicament, and to maximize the value of its business, for the year prior to the bankruptcy filing, EOI determined to market itself for sale to various interested parties. As of September 29, 2012, EOI repaired the damage to its operating equipment, and has been operating in the ordinary course since that date. Moreover, EOI's marketing efforts began generating positive results, with several parties expressing interest in exploring a potential transaction with EOI that would result in the sale of EOI's business as a going concern.  However, EOI was forced to file for bankruptcy before finalizing the sale of its assets.

5.     EEHI owns 100% of the stock in EOI. EEHI is not an operating company and solely exists for the purpose of owning 100% of the stock in EOI. EEHI has no creditors or other assets apart from its stock in EOI.

6.     Through the Debtors' cases, the Debtors intend to market and sell all or substantially all of the Debtors' assets to a qualified buyer. The Debtors currently contemplate that the sale of the Debtors' assets would be structured as a sale of the stock in EOI owned by EEHI. The proceeds from the sale of EOI's shares would then be used to pay EOI's creditors (as EEHI does not have any creditors).

7.     Through their bankruptcy cases, the Debtors intend to complete the marketing of their assets and the solicitation of offers for the purchase of their assets to confirm a plan of reorganization that provides for the sale of the majority of their business as a going concern to a qualified buyer.  Given all of their pre-petition efforts and discussions with potential purchasers, in addition to Cappello's experience and familiarity with the Debtor's business and sale process, the Debtors anticipate an expeditious marketing and sale process that will allow the Debtors to execute a transaction that both ensures the ongoing viability of the business and maximizes the value available to all creditors.

///

**B.**      **Employment of Cappello as Exclusive Investment Banker.**

8.      Prior to the Petition Date, Cappello was assisting the Debtors pursuant to a prior engagement agreement entered into on or about July 1, 2011 (the "Prior Agreement") in identifying a buyer for the Debtors' assets and consummating a sale of the Debtors' assets. Under the Prior Agreement, Cappello has a claim against the Debtors' estates in the approximate amount of $350,000. However, under the Retention Agreement, Cappello agrees to waive its claim against the Debtors' estates and be employed pursuant to the Retention Agreement, a copy of which is attached to the Declaration of Robert Deutschman annexed hereto (the "Deutschman Declaration") as Exhibit "1."

9.      The Debtors decided to engage Cappello based on, among other things, Cappello's extensive experience in investment banking services to public and private companies for a broad range of transactions including advice on mergers and acquisitions and guidance on strategic decisions. A true and correct copy of Cappello's firm résumé is attached to the Deutschman Declaration as Exhibit "2." True and correct copies of the professional résumés of Rob Deutschman and Paul Kromwyk, who will be the professionals at Cappello primarily responsible for working on the Debtors' cases, are collectively attached to the Deutschman Declaration as Exhibit "3." Based on Cappello's extensive experience in providing investment banking services in connection with mergers and acquisitions and Cappello's intimate knowledge of the Debtors' business and sale plan based on Cappello's pre-petition relationship with the Debtors, the Debtors believe that Cappello is uniquely qualified to act as the Debtors' exclusive investment banker in conjunction with a sale of the Debtors' assets and that Cappello will allow the Debtors to obtain the highest and best price for their assets, which will benefit all creditors.

10.      A summary of the terms of the Retention Agreement with Cappello are as follows:[1]

---

[1] This is a summary only. If there is any discrepancy between this summary and the actual terms of the Retention Agreement, the terms of the Retention Agreement shall govern.

- Cappello will identify buyers for the Debtors' assets and seek to consummate a sale of the Debtors' assets by, among other things:

  - Analyzing transaction options available to the Debtors;

  - Counseling the Debtors as to strategy and tactics for effecting a potential transaction;

  - Advising the Debtors as to structure and form of a possible transaction, including the form of any agreements related thereto;

  - Assisting the Debtors in obtaining appropriate information and in preparing due diligence presentations related to a potential transaction;

  - Introducing the Debtors to strategic or financial buyers and/or strategic partners, as may be appropriate;

  - Assisting in negotiations related to a potential transaction, as may be appropriate, on behalf of the Debtors;

  - Coordinating with the Debtors' legal counsel regarding matters related to the closing of a transaction; and

  - Rendering such other investment banking services as may from time to time be agreed upon by the Debtors and Cappello.

- In the event of a sale, Cappello's fee shall be a cash fee equal to two and three-quarters percent (2.75%) of the transaction value.

- The Debtors agree to advance to Cappello $5,000 (the "Expense Advance") to reimburse any out of pocket expenses incurred by Cappello during its engagement, whether or not a transaction is consummated. Any unused portion of the Expense Advance shall be returned to the Debtors upon termination.

11.    Cappello has not received a retainer.  Cappello has not been paid any money by the Debtors at any time except: (a) for a fee in the approximate amount of $962,500 on or about August 8, 2011 for capital raising services rendered in connection with the refinancing of the

senior debt of Evergreen Holdings, Inc. (the "Refinance Transaction Fee"); and (b) for the Expense Advance discussed above and reimbursement of expense payments in connection with the Debtors' pre-petition retention of Cappello. Cappello has not received any lien or other interest in property of the Debtors or of a third party to secure payment of Cappello's fees or expenses.

12.    Cappello has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

13.    Cappello understands the provisions of 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Debtors' employment of Cappello as exclusive investment banker and of all fees and reimbursement of expenses that Cappello will receive from the Debtors and the Debtors' estates.

14.    Cappello will seek Court approval for the payment of any fees pursuant to 11 U.S.C. § 328.

15.    Cappello is not a creditor (due to a waiver of its pre-petition claim), an equity security holder or an insider of either of the Debtors.

16.    Cappello does not have any previous connection with any insider of either of the Debtors or any insider of an insider of either of the Debtors, except as set forth herein.

17.    Cappello is not and was not an investment banker for any outstanding security of either of the Debtors. Cappello has not been within three years before the Petition Date an investment banker for a security of either of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of either of the Debtors.

18.    Neither Cappello nor any member of Cappello is, nor was, within two years before the Petition Date, a director, officer or employee of either of the Debtors or of any investment banker for any security of either of the Debtors.

19.    As noted above and in the Retention Agreement, Cappello has agreed to waive its pre-petition claim against the Debtors and their estates. Given Cappello's agreement to waive its pre-petition claim against the Debtors, to the best of Cappello's knowledge does not hold or

represent any interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, either of the Debtors or an investment banker for any security of either of the Debtors, or for any other reason.

20. As set forth in the annexed declaration, to the best of Cappello's knowledge, Cappello does not hold or represent any interest materially adverse to either of the Debtors or the Debtors' estates, and Cappello is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code. Also, to the best of Cappello's knowledge, Cappello has no prior connection with either of the Debtors, any creditors of the Debtors or their estates, or any other party in interest in these cases, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee except that Cappello was previously retained by the Debtors pursuant to the Prior Agreement.

21. The Debtors believe that their employment of Cappello upon the terms and conditions set forth above is in the best interest of the Debtors' estates.

**WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors' employment of Cappello as the Debtors' exclusive investment banker, pursuant to 11 U.S.C. § 327 and 328, effective as of the Petition Date, upon the terms and conditions set forth in the Retention Agreement and this Application.

Dated: April 9, 2013

EVERGREEN OIL, INC.
EVERGREEN ENVIRONMENTAL
HOLDINGS, INC.

_____/s/ William Scottini_____
By:    WILLIAM SCOTTINI
       Its:    Chief Financial Officer

///

///

///

Submitted by:

LEVENE, NEALE, BENDER, YOO
    & BRILL, L.L.P.


By: _____*/s/ Lindsey L. Smith*_____
      DAVID L.  NEALE
      JULIET Y. OH
      LINDSEY L. SMITH
(Proposed) Attorneys for Chapter 11 Debtors
and Debtors in Possession

## DECLARATION OF ROBERT DEUTSCHMAN

I, ROBERT DEUTSCHMAN, HEREBY DECLARE AS FOLLOWS:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Managing Director of Cappello Capital Corp. ("Cappello").  I have specialized in investment and merchant banking activities for nearly 28 years, with a particular emphasis on the provision of strategic advice, mergers and acquisitions, and executing private placements of institutional capital for growing public and private companies on a global basis. For 40 years, the principals of Cappello and its affiliates have been providing innovative investment banking services to public and private companies for a broad range of transactions exceeding $100 billion in aggregate value. Cappello is an international company with offices or representative offices in the United States, China, and Korea.

3.      I make this declaration in support of the Application to which this declaration is attached.  Any terms not otherwise defined herein have the same meanings as in the Application.

4.      Prior to the Petition Date, Cappello was assisting the Debtors pursuant to a prior engagement agreement entered into on or about July 1, 2011 (the "Prior Agreement") in identifying a buyer for the Debtors' assets and consummating a sale of the Debtors' assets. Under the Prior Agreement, Cappello has a claim against the Debtors' estates in the approximate amount of $350,000. However, under the Retention Agreement, Cappello agrees to waive its claim against the Debtors' estates and be employed pursuant to the Retention Agreement, a copy of which is attached hereto as Exhibit "1."

5.      I am informed that the Debtors decided to engage Cappello based on, among other things, Cappello's extensive experience in investment banking services to public and private companies for a broad range of transactions including advice on mergers and acquisitions and guidance on strategic decisions. A true and correct copy of Cappello's firm résumé is attached hereto as Exhibit "2." True and correct copies of the professional résumés of Paul Kromwyk and me, who will be the professionals at Cappello primarily responsible for working on the Debtors'

cases, are collectively attached hereto as Exhibit "3."  Based on Cappello's extensive experience in providing investment banking services in connection with mergers and acquisitions and Cappello's intimate knowledge of the Debtors' business and sale plan based on Cappello's pre-petition relationship with the Debtors, the Debtors and I believe that Cappello is uniquely qualified to act as the Debtors' exclusive investment banker in conjunction with a sale of the Debtors' assets and that Cappello will allow the Debtors to obtain the highest and best price for their assets, which will benefit all creditors.

6.    A summary of the terms of the Retention Agreement with Cappello are as follows:[2]

- Cappello will identify buyers for the Debtors' assets and seek to consummate a sale of the Debtors' assets by, among other things:

  - Analyzing transaction options available to the Debtors;

  - Counseling the Debtors as to strategy and tactics for effecting a potential transaction;

  - Advising the Debtors as to structure and form of a possible transaction, including the form of any agreements related thereto;

  - Assisting the Debtors in obtaining appropriate information and in preparing due diligence presentations related to a potential transaction;

  - Introducing the Debtors to strategic or financial buyers and/or strategic partners, as may be appropriate;

  - Assisting in negotiations related to a potential transaction, as may be appropriate, on behalf of the Debtors;

---

[2] This is a summary only.  If there is any discrepancy between this summary and the actual terms of the Retention Agreement, the terms of the Retention Agreement shall govern.

■  Coordinating with the Debtors' legal counsel regarding matters related to the closing of a transaction; and

■  Rendering such other investment banking services as may from time to time be agreed upon by the Debtors and Cappello.

•  In the event of a sale, Cappello's fee shall be a cash fee equal to two and three-quarters percent (2.75%) of the transaction value.

•  The Debtors agree to advance to Cappello $5,000 (the "Expense Advance") to reimburse any out of pocket expenses incurred by Cappello during its engagement, whether or not a transaction is consummated. Any unused portion of the Expense Advance shall be returned to the Debtors upon termination.

7.    Cappello has not received a retainer.  Cappello has not been paid any money by the Debtors at any time except for the Refinance Transaction Fee and the Expense Advance discussed above and reimbursement of expense payments in connection with the Debtors' pre-petition retention of Cappello.  Cappello has not received any lien or other interest in property of the Debtors or of a third party to secure payment of Cappello's fees or expenses.

8.    Cappello has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

9.    Cappello understands the provisions of 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Debtors' employment of Cappello as exclusive investment banker and of all fees and reimbursement of expenses that Cappello will receive from the Debtors and the Debtors' estates.

10.    Cappello will seek Court approval for the payment of any fees pursuant to 11 U.S.C. § 328.

11.    Cappello is not a creditor (effective as of the waiver of Cappello's prepetition claim as set forth in the Engagement Letter), an equity security holder or an insider of either of the Debtors.

12.     Cappello does not have any previous connection with any insider of either of the Debtors or any insider of an insider of either of the Debtors, except as set forth herein.

13.     Cappello is not and was not an investment banker for any outstanding security of either of the Debtors.  Cappello has not been within three years before the Petition Date an investment banker for a security of either of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of either of the Debtors.

14.     Neither Cappello nor any member of Cappello is, nor was, within two years before the Petition Date, a director, officer or employee of either of the Debtors or of any investment banker for any security of either of the Debtors.

15.     As noted above and in the Retention Agreement, Cappello has agreed to waive its pre-petition claim against the Debtors and their estates. Given Cappello's agreement to waive its pre-petition claim against the Debtors, to the best of my knowledge, Cappello does not hold or represent any interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, either of the Debtors or an investment banker for any security of either of the Debtors, or for any other reason.

16.     To the best of my knowledge, Cappello does not hold or represent any interest materially adverse to either of the Debtors or the Debtors' estates, and Cappello is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Also, to the best of my knowledge, Cappello has no prior connection with either of the Debtors, any creditors of the Debtors or their estates, or any other party in interest in these cases, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee except that Cappello was previously retained by the Debtors pursuant to the Prior Agreement and in connection with the Refinance Transaction described in the Application.

///

///

1    I declare and verify under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct to the best of my knowledge.

3        Executed on this 5th day of April, 2013, at Santa Monica, California.

4

5

        _____
6        ROBERT DEUTSCHMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**



CONFIDENTIAL

April 4, 2013

Mr. Jacob Voogd
Chairman and CEO
Evergreen Environmental Holdings, Inc.
Evergreen Oil, Inc.
2415 Campus Drive, Suite 225
Irvine, CA 92612

Dear Mr. Voogd:

This letter agreement ("Agreement") confirms the engagement of Cappello Capital Corp. ("Advisor") as exclusive financial advisor to Evergreen Environmental Holdings, Inc. and Evergreen Oil, Inc. (together known as the "Company") to perform the financial advisor services provided for herein. The term "Company" as used herein shall include Evergreen Environmental Holdings, Inc., Evergreen Oil, Inc., their subsidiaries and affiliates and the respective entities that any one of them forms or merges into, that acquires such entity or in which it invests.

### Transaction:

Advisor may perform financial advisor services relating to the following types of transactions that both the Company and the Advisor shall have agreed on for Advisor to pursue. "Transaction" means:

a) the sale of the Company (a "Sale" or "Merger") to a Covered Party, whether by merger, reverse merger, sale in one or more transactions of all or substantially all of the assets of the Company, or sale in one or more transactions of capital stock, that results in the shareholders of the Company owning less than a majority of the surviving entity or, in the case of a merger or sale with or to a shell company or a special purpose acquisition corporation (SPAC), irrespective of the resulting percentage of ownership; and

b) the sale of a portion of the Company (a "Divestiture"), whether by sale of capital stock or sale of any portion of the assets of the Company to a Covered Party.

The parties understand and agree that any transaction entered into by the Company and any Covered Party that is not specifically described in clauses (a) and (b) shall constitute the Transaction described in (a) or (b) that most closely describes the result for the Company.

### Description of Services:

Advisor will, to the extent requested by the Company, assist the Company in analyzing potential Transactions according to the terms and conditions of this Agreement. In this regard, Advisor may undertake certain activities on behalf of the Company, including the following:

a) analyzing Transaction options available to the Company;

b) counseling the Company as to strategy and tactics for effecting a potential Transaction;

c) advising the Company as to the structure and form of a possible Transaction, including the form of any agreements related thereto;

d) assisting the Company in obtaining appropriate information and in preparing due diligence presentations related to a potential Transaction;

e) introducing the Company to strategic or financial buyers and/or strategic partners, as may be appropriate;

Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp
Engagement Agreement – April 4, 2013 – Page 2

f)   assisting in negotiations related to a potential Transaction, as may be appropriate, on behalf of the Company;

g)  coordinating with the Company's legal counsel regarding matters related to the closing of a Transaction; and

h)  rendering such other financial advisory and investment banking services as may from time to time be agreed upon by the Company and the Advisor.

Advisor and the Company understand that the specific services from the list above will have to be mutually agreed upon with Advisor and are dependent upon the type of Transaction or Transactions that the Company ultimately determines to pursue and, in the event that the Company commences a case under title 11 of the United States Code (the "Bankruptcy Code"), shall be consistent with any applicable Orders of the United States Bankruptcy Court presiding over the Company's bankruptcy proceedings (the "Bankruptcy Court"). Any proposal for a Transaction is subject to documentation satisfactory to the Company, and, if required by applicable law, approval by the Company's Board of Directors and an Order of the Bankruptcy Court.  Advisor's engagement is with the Company only and no other party is intended as a third party beneficiary of this Agreement.  Any communications by or on behalf of Advisor with shareholders, members, directors, officers, managers and/or partners of the Company is intended solely within their respective capacities as directors, managers or officers of the Company and is not intended in their capacity as shareholders, members, partners or other non-management related capacities.

### Exclusivity:

The Company agrees that no other financial advisor is or will be authorized by it during the Term of this Agreement to perform services on the Company's behalf of the type described hereunder or which Advisor is otherwise authorized to perform hereunder.  No fee payable to any other financial, legal, or other advisor either by the Company or any other entity shall reduce or otherwise affect the fees payable hereunder to Advisor, except as otherwise agreed to in writing by Advisor.  In order to coordinate our efforts with respect to a possible Transaction, during the period of our engagement hereunder neither the Company nor any representative thereof (other than Advisor) will engage in discussions regarding a Transaction except through Advisor.  If the Company or its management receives an inquiry regarding a Transaction, it will promptly inform Advisor in writing of such inquiry.

### Information Furnished by the Company:

The Company will furnish Advisor with all financial and other information and data as Advisor believes appropriate in connection with its activities on the Company's behalf, and shall provide Advisor full access to its officers, directors, employees and professional advisors.  The Company agrees that it and its counsel will be solely responsible for ensuring that the Transaction complies in all respects with applicable law.  The Company represents and warrants that any written or oral communication with Advisor at all times through Closing (as defined below), will not contain any untrue statement of material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.  The Company will promptly notify Advisor if it learns of any material inaccuracy or misstatement in, or material omission from, any information theretofore delivered to Advisor.  The Company recognizes and confirms that Advisor, in connection with performing its services hereunder, (i) will be relying without investigation upon all information that is available from public sources or supplied to it by or on behalf of the Company or its advisors, (ii) will not in any respect be responsible for the accuracy or completeness of, or have any obligation to verify, the same and (iii) will not conduct any appraisal of any assets of the Company.  The Company will also cause to be furnished to Advisor at the Closing copies of such agreements, opinions, certificates and other documents delivered at the Closing as Advisor may reasonably request.

**Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp**
Engagement Agreement – April 4, 2013 – Page 3

**Fees and Expenses**:

In connection with the services rendered by Advisor under this Agreement, the Company agrees to pay the Advisor the following fees (such fees, sometimes referred to herein collectively as the "Transaction Fee") and expense reimbursement:

a)   At Closing of a Transaction, the Company shall pay the Advisor a cash fee equal to two and three-quarters percent (2.75%) of the Transaction Value.

b)   The Company acknowledges that it currently owes Advisor approximately $350,000 under the terms included in a letter agreement between the Company and Advisor dated July 1, 2011 (the "Prior Agreement"), which amount is presently due and payable and accruing interest in accordance with the terms of the Prior Agreement. In the event of a bankruptcy filing by the Company, Advisor agrees that, pursuant to and upon the entry of a final order approving its retention on the terms hereof (a "Retention Order"), it shall waive all amounts owing under the Prior Agreement, and will not assert claims for such amounts as a creditor in the present bankruptcy proceeding.

c)   The Company agrees to advance to the Advisor $5,000 ("Expense Advance") to reimburse any out of pocket expenses incurred by the Advisor during the Term of the Agreement, whether or not a Transaction is consummated, including, but not limited to, legal, consulting, travel, lodging and due diligence expenses. Any unused portion of the $5,000 shall be returned to the Company upon the Termination. If any contemplated expense is greater than $5,000, the Advisor must obtain prior written consent of the Company (for which consent an email confirmation from the Company shall be deemed sufficient). The Company shall immediately upon receipt of an invoice reimburse the Advisor for all expenses related to arranging a Transaction, or other expenses incurred by Advisor in providing services to the Company, including, but not limited to, legal, consulting, travel, lodging and due diligence expenses, subject to a credit for the unapplied amount, if any, of Expense Advance actually received by the Advisor.

d)   In the event that Advisor's fees, costs or other compensation, including equity securities, are not paid or issued (as applicable) within 10 days from the date due, or the date of Advisor's invoice, if any, there will be an additional charge at a monthly rate of one percent (1.0%), or such lesser rate mandated by California law, upon the unpaid cash balance or the fair market value of such securities, as applicable, determined as of the date such securities were to be issued to Advisor in accordance with this Agreement.

e)   Notwithstanding the forgoing, if any transaction of any kind that does not constitute a Sale, Merger or Divestiture described above, but resembles a private placement, strategic alliance, recapitalization, or acquisition, shall be Closed during the Term or the Fee Period between the Company and a Covered Party, then Advisor shall be entitled to be paid by the Company a cash fee equal to two and three-quarters percent (2.75%) of the Transaction Value of the Company or acquisition target, as applicable.

In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the Bankruptcy Court, pursuant to sections 327 and 328 of the Bankruptcy Code and the applicable Bankruptcy Rules and local rules, for entry of a Retention Order approving Advisor's retention by the Company under the terms of this Agreement, and subject to the standard of review contained in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall provide Advisor with a draft of such application and any proposed Retention Order sufficiently in advance of the filing of the application or the submission of the Retention Order to permit Advisor and its counsel to review and comment thereon. Advisor shall have no obligation to provide services hereunder in the event that the Company becomes a debtor under the Bankruptcy Code unless and until Advisor's retention is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Advisor in all respects. Advisor acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Advisor's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any fee and expense guideline orders, provided that the Retention Order shall provide that Advisor is not required to maintain detailed time records. Pursuant to the Retention Order, the Transaction Fee shall be paid at Closing from proceeds thereof (if

Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp
Engagement Agreement – April 4, 2013 – Page 4

applicable) or otherwise as promptly as practicable, subject to application to and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code. Advisor's fees and expenses will be treated as an administrative priority claim in the Company's bankruptcy proceeding. The Company acknowledges and agrees that Advisor's experience and expertise, including its mergers and acquisitions capabilities, will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Advisor's services derives in substantial part from that expertise and experience and that, accordingly, the amount of the Transaction Fees payable hereunder, and the other terms and conditions of employment, are reasonable regardless of the number of hours expended by Advisor's professionals in the performance of the services hereunder.

**Term, Termination and Fee Period:**

The term of this Agreement shall run from the date of receipt by Advisor of the Company's signed acceptance of this Agreement, until twelve months thereafter, and will then automatically extend on a month-to-month basis thereafter until cancelled by either party pursuant to the terms hereof ("Term"), provided that, in the event the Company becomes a debtor in a bankruptcy case, Advisor's obligations hereunder shall be contingent on the entry of a final Retention Order as described above. Except as otherwise provided for herein, this Agreement may be cancelled by either party upon thirty (30) days' prior written notice to the other party. Termination shall be deemed effective on the earlier of thirty (30) days following that date of such written notice or as mutually agreed upon by Company and Advisor ("Termination"). Notwithstanding the foregoing, upon the Closing of a Transaction between any Covered Party (or any of their respective affiliates) and the Company at any time within two (2) years after the Termination or expiration of the Term, as extended, if extended (the "Fee Period"), the Company agrees to promptly pay to Advisor at the Closing of each such Transaction the fees as determined according to the "Fees and Expenses" section of this Agreement. The Closing of a Transaction shall be deemed to occur during the Fee Period if any agreement in principle which includes material terms of such Transaction is reached prior to the expiration of the Fee Period even if the closing of such Transaction occurs after the expiration of the Fee Period. Within thirty (30) business days following the Termination or expiration of the Term, Advisor shall deliver to the Company a list of Covered Parties for purposes of this Agreement. All provisions of this Agreement shall survive Termination and expiration of the Term, except for the obligations of Advisor to provide services to the Company and any other party to this Agreement.

**Waiver of Conflicts:**

The Company acknowledges that Advisor and its affiliates have and will continue to have investment banking and other relationships with parties other than the Company pursuant to which Advisor may acquire information of interest to the Company. Advisor shall have no obligation to disclose such information to the Company, or to use such information in connection with any contemplated transaction. The Company recognizes that Advisor is being engaged hereunder to provide the services described above only to the Company and is not acting as an agent or a fiduciary of, and shall have no duties or liability to, the equity holders of the Company or any third party in connection with its engagement hereunder, all of which are hereby expressly waived. No one other than the Company is authorized to rely upon the engagement of Advisor hereunder or any statements, advice, opinions or conduct by Advisor. Upon Termination or expiration of the Term, Advisor shall be automatically released as to providing future services of any type whatsoever to the Company as otherwise contemplated hereunder.

**Indemnification:**

Recognizing that Advisor in providing the services contemplated hereby will act as an independent contractor and will rely on information provided by the Company, the Company shall indemnify Advisor and the other Indemnified Persons as more specifically set forth in **Appendix A** hereto.

**Customer Identification Program:**

The USA PATRIOT ACT ("Patriot Act") is designed to detect, deter and punish terrorists in the U.S. and abroad. Pursuant to the requirements imposed on Advisor by FINRA, Advisor is subject to the Patriot Act. Upon request of Advisor, Company agrees that it may need to provide Advisor with various

Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp
Engagement Agreement – April 4, 2013 – Page 5

identification documents and/or other information during the Transaction process to verify the identity of
any person seeking to establish a formal business relationship with Advisor to effect a financial
transaction and for Advisor to maintain those records used for verification. Advisor maintains a Business
Continuity Plan, a written summary of which may be obtained upon request of Advisor at its executive
offices

This Agreement together with **Appendix A**, attached hereto and incorporated by reference herein,
constitute the entire agreement of the parties hereto with respect to the subject matter hereof, supersede all
other oral or written representations, understanding or agreements relating to such subject matter, and
may not be amended or modified except by a written agreement signed by all parties hereto.

If this Agreement meets with your approval, please sign a copy of this Agreement and return it to us by
facsimile or electronic mail, and mail the signed original to the undersigned.

Thank you for the opportunity to be of service.

Sincerely,

Rob Deutschman
Managing Director
Cappello Capital Corp.

**AGREED AND ACCEPTED**:

The foregoing Agreement accurately sets forth our understanding and agreement with respect to the
matters set forth herein and has been executed by our duly authorized representative:

**EVERGREEN ENVIRONMENTAL HOLDINGS, INC.
EVERGREEN OIL, INC.**

By: _George Lamont_

Name: _George Lamont_

Title: _Exec V.D_

Date: _7-Apr-13_

Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp
Engagement Agreement – April 4, 2013 – Page 6

## Appendix A

### Additional Business Terms

This **Appendix A** is referenced in the Agreement between the Company and Cappello Capital Corp. and is an integral part of the Agreement. Unless otherwise defined in **Appendix A**, all capitalized terms used herein shall have the same meaning as set forth in the Agreement.

1.    Definitions. For purposes of the Agreement, the capitalized terms below shall have the following meanings:

a.    "Transaction Value" shall mean the total proceeds and other consideration paid to or received by, or to be paid to or received by, the Company or its shareholders, members, partners, other equity holders, employees or creditors in connection with a Transaction (which consideration shall be deemed to include amounts in escrow and amounts to be paid in the future, including earn-out payments, milestone payments and other future payments, as discussed below), including, without limitation, the gross value of all cash and the fair market value of: (i) equity securities (including, but not limited to, common stock, preferred stock, warrants, options, stock appreciation rights, and equity interests, in each case whether or not vested or issued), in the Company, its successor or buyer and its affiliates; (ii) straight or convertible debt instruments or other obligations held by the Company or its shareholders, members, partners, or other equity holders whether or not vested or issued; (iii) interest-bearing debt (including capitalized leases) and pension and other unfunded liabilities assumed in connection with a Transaction; (iv) tangible, "non-equity" assets such as accounts receivable net of payables, and cash and cash equivalents to be retained or businesses retained by the Company, in the event of an asset sale, or distributed to the Company's shareholders, members, partners, or other equity holders in the event of a stock or other equity sale, merger or similar reorganization; (v) amounts paid to the Company, its shareholders, members, partners, other equity holders, employees or directors in connection with non-competition agreements; (vi) amounts paid with respect to management retention, above-market consulting, above-market lease agreements, royalty, licensing or any similar agreements; (vii) amounts paid, at any time during the Term, Fee Period, or Break-up Fee Period, as extraordinary dividends or other compensation paid to the Company's shareholders, members, partners or other equity holders in respect of their interest in the Company in contemplation of a Transaction (but excluding performance-based bonuses); and (viii) any Company or its shareholders', members', partners', or other equity holders' obligations, including transaction expenses, which are forgiven or assumed by a purchaser or, in the event of a stock sale, merger or similar reorganization, which are left outstanding after a Transaction. In the event there is disagreement as to whether the Company is receiving payment for services at usual market rates or receiving consideration in a Transaction, the Company and Advisor will negotiate in good faith to agree on the correct treatment for such amounts. In the event of a sale of less than 100% of the equity interests of the Company, the Transaction Value shall be calculated as if 100% of the ownership of the equity interests of the Company has been sold. The face amount of all escrowed funds, promissory notes, fixed future non-employment related payments, or other non-contingent future payments will be considered received by Company at Closing and included in Transaction Value solely for purposes of calculating Advisor's Transaction Fee (and the Transaction Fee will be paid as if these were received by the Company at Closing). If the Company completes a Transaction that includes seller notes, earn-out provisions or other performance-based contingent consideration ("Deferred Consideration"), the Company and Advisor will negotiate in good faith to agree on the value of such Deferred Consideration for the purpose of calculating that portion of the Transaction Fee to be paid to Advisor at the Closing in consideration thereof; if they cannot so agree, the value of the Deferred Consideration shall be included in Transaction Value solely for the purpose of Advisor's fee calculation hereunder, but the portion of the Transaction Fee allocable to the Deferred Consideration will only be paid to Advisor, if at all, when the Company or its shareholders, members, partners, or other equity holders receive such Deferred Consideration payments, provided that, in either outcome, the Transaction Fee at Closing shall be no less than that Transaction Fee determined according to the Fees and Expenses section of this Agreement.

**Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp**
Engagement Agreement – April 4, 2013 – Page 7

For the purpose of calculating the Transaction Value, any securities will be valued at the time of the Closing of the Transaction as follows: (i) if such securities are traded on a stock exchange or the National Market System, the securities will be valued at the average last sale or closing price for the fifteen trading days immediately prior to the closing of the Transaction; (ii) if such securities are traded primarily in over-the-counter transactions (OTC), the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a fifteen-trading day period immediately prior to the Closing of the Transaction; and (iii) if such securities have not been traded for the time period necessary to determine values under clauses (i) and (ii) above, as mutually agreed by the parties or, if such agreement cannot be reached, as determined by an experienced, mutually-acceptable neutral appraiser or valuation professional who is instructed to take into account lock-up periods, illiquidity and minority shareholder discounts (and whose determination shall be final and binding on the parties); and provided that, clause (iii) shall be applicable (meaning the parties shall mutually agree on the value of such locked-up securities or, if such agreement cannot be reached within a reasonable time after initiating such discussion, such mutually-acceptable appraiser or valuation professional will be engaged to determine such value) if the recipients of such received securities are not permitted to sell at least fifty percent (50%) of them on the relevant exchange or market within 120 days following the Closing. Any other non-cash consideration shall be valued at the fair market value thereof as of the day prior to the Closing of the Transaction, as such fair market value shall be mutually agreed by Advisor and the Company acting in good faith (or, if Advisor and the Company cannot agree, as determined by an independent third-party accounting or valuation firm mutually chosen by the parties, whose determination shall be final and binding on the parties).

b.    "Closing" or "Closing of a Transaction" means the date that is the earlier of the execution by the Company of the material legal documentation or the completion of the transfer (if applicable) of funds to or from the Company in consideration of a Transaction.

c.    "Covered Party" means, collectively and individually, any natural person, corporation, partnership, limited liability company or other entity introduced or identified by or on behalf of Advisor or Company, or who is in contact with or is contacted by Advisor or Company during the Term of the Agreement.

2.    Limitation on Damages and Indemnification.

a.    The Company shall indemnify, defend and hold harmless the Advisor and its respective directors, officers, agents, employees, affiliates and representatives (collectively the "Indemnified Persons" and individually an "Indemnified Person"), to the full extent lawful, from and against any losses, liabilities, claims or damages, including, without limitation, fees and expenses of legal counsel, related to or arising out of the Advisor's engagement hereunder or the Advisor's role in the Transactions contemplated hereby, including, without limitation, any losses, liabilities, claims or damages arising out of any statements or omissions made in connection with the Transactions contemplated hereby whether by the Company, its employees, agents, Advisor or otherwise; *provided, however,* that such indemnity shall not apply to claims which are determined by a final judgment of a court of competent jurisdiction to have resulted directly from the fraud, willful misconduct, of an Indemnified Person.

b.    No Indemnified Person shall have any liability to the Company for or in connection with this Agreement or the services rendered by Advisor, except for any which are determined by a final judgment of a court of competent jurisdiction to have resulted directly from the fraud or willful misconduct of the Indemnified Person. Notwithstanding any other provisions hereunder, in no event shall the Indemnified Persons be liable to the Company for an amount greater, in the aggregate, than the cash fees actually received by the Advisor hereunder. These indemnification provisions are not exclusive, and shall be in addition to any other rights that any Indemnified Person may have at common law or otherwise.

c.    The Company will not, without Advisor's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit, investigation or

Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp
Engagement Agreement – April 4, 2013 – Page 8

proceeding. The Company will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this Agreement will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

d.  If any action is brought against any Indemnified Person in respect to which indemnity may be sought against the Company pursuant to this Agreement, or if any Indemnified Person receives notice from any potential litigant of a claim which such person reasonably believes will result in the commencement of any action or proceeding, such Indemnified Person shall promptly notify the Company in writing. Failure to notify the Company of any such action or proceeding shall not, however, relieve the Company from any other obligation or liability which it may have to any Indemnified Person under this Agreement or otherwise, except to the extent that the Company demonstrates that defense of such action is materially prejudiced by this failure. In case any such action or proceeding shall be brought against any Indemnified Person, the Company shall (at its own expense) defend the Indemnified Person in such action or proceeding with counsel of the Company's choice, and shall be entitled (at its own expense) to compromise or settle the action or proceeding, at its expense. Counsel selected by the Company under these circumstances must be satisfactory to the Indemnified Person in the exercise of its reasonable judgment. Notwithstanding the Company's election to assume the defense of any action or proceeding, the Indemnified Person shall have the right to employ separate counsel and to participate in the defense of any action or proceeding, and the Company shall bear the reasonable fees, costs and expenses of this separate counsel, if (i) the use of counsel chosen by the Company to represent the Indemnified Person would, in the judgment of the Indemnified Person, create a conflict of interest; (ii) the defendants in, or targets of, any action or proceeding include both an Indemnified Person and the Company, and the Indemnified Person shall have reasonably concluded that a conflict of interest exists between such Indemnified Person and the Company because, among other matters, there may be legal defenses available to it or to other Indemnified Persons which are different from or additional to those available to the Company (in which case the Company shall not have the right to direct the defense of such action or proceeding on behalf of the Indemnified Person); (iii) the Company shall not have employed counsel satisfactory to such Indemnified Person in the exercise of the Indemnified Person's reasonable judgment to represent such Indemnified Person within a reasonable time after notice of the institution of such action or proceeding; or (iv) the Company shall authorize such Indemnified Person to employ separate counsel at the Company's expense. The Company shall pay, or at the Advisor's election, advance all reasonable fees, costs and expenses of any separate counsel retained pursuant to this paragraph at least quarterly.

e.  In order to provide for just and equitable contribution, if a claim for indemnification is found unenforceable in a final, non-appealable judgment by a court of competent jurisdiction, even though the express provisions of this Agreement provide for indemnification in such case, the Company and the Advisor shall contribute to the losses, claims, damages, judgments, liability, expenses or costs for which the Indemnified Person may be liable in accordance with the relative benefits received by, and the relative fault of each respective party in connection with the statements, acts or omissions which resulted in losses, claims, damages, judgments, liabilities, or costs.  The Company agrees that under these circumstances, a pro rata allocation would be unfair. Under no circumstances, however, will the Advisor be obliged to make any contribution to any expenses described in this paragraph which is greater than the amount of cash previously received by Advisor for its services to the Company. No person found liable for a fraudulent misrepresentation or omission shall, however, be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation of omission.

f.  In further consideration of the provisions contained in our Agreement, in the event that an Indemnified Person becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including stockholders of Company, in connection with or as a result of the engagement or any matter referred to in the engagement, the Company will reimburse such Indemnified Person for its reasonable and customary legal and other expenses (including without limitation the costs and expenses incurred in connection with investigating,

**Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp**
Engagement Agreement – April 4, 2013 – Page 9

preparing for and responding to third party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred.

g.    Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Advisor in writing thereof (if not previously so notified) and, if requested by Advisor, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Advisor. The Company shall use its best efforts to cause any Transaction agreements with acquirers or providers of capital or financing to include exculpation and indemnification provisions in favor of Advisor and the Indemnified Persons which are equivalent to those set forth in **Appendix A** and are binding on such persons.

h.    These indemnification provisions shall (i) remain operative and in full force and effect regardless of any Termination or completion of the engagement of the Advisor; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have at common law or otherwise.

3.    OFAC Programs.    The Company represents, to the best of its knowledge, that none of (i) the Company, (ii) any person controlling or controlled by the Company, (iii) any person having a beneficial ownership interest in the Company, and (iv) any person for whom the Company acts as an agent or nominee is (x) a country, territory, individual or entity named on the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") list, (y) a person or entity prohibited under the programs administered by OFAC ("OFAC Programs"), or (z) a county, territory, individual or entity named on another international sanctions list.    The Company further represents that, to the best of its knowledge, none of the proceeds of the Transaction shall be derived from or used for any purpose prohibited under the OFAC Programs or other international sanctions programs.

4.    Attorneys' Fees Provision.    In the event of any dispute between the Company and the Advisor, the prevailing party shall be entitled to recover from the other all of the prevailing party's costs and reasonable attorneys' fees and costs, together with an award of interest at 10% per annum (or if lower, the maximum interest rate permitted by law) on all amounts awarded to the prevailing party, including, without limitation, transaction fees and securities, attorneys' fees and costs and other costs.

5.    Governing Law and Jurisdiction.    This Agreement is governed by and construed in accordance with the laws of the state of California, without regard to its choice of laws provisions.    All lawsuits, hearings, arbitration proceedings or other proceedings arising from or related to this Agreement shall take place in Los Angeles County, State of California.    The parties irrevocably waive any objections they may have based on improper venue or inconvenient forum in Los Angeles County, State of California. Notwithstanding the foregoing, Advisor agrees that during the pendency of any bankruptcy of the Company, the Bankruptcy Court shall have jurisdiction to address matters relating to this Agreement.

6.    Miscellaneous:

a.    Advisor has the right to publish a tombstone and case study describing the Transaction upon Closing, at its own expense, which may include the reproduction of the Company's logo, a brief description of the Transaction(s) and a link to the Company's website.    If requested by Advisor, the Company agrees to include a mutually acceptable reference to Advisor in any press release or other public announcement made by the Company regarding any Transaction.

b.    The headings used herein are for ease of reference only, and shall not be used to construe the meaning of this Agreement. This Agreement may be executed in counterparts, including by electronic transmission, each of which shall be deemed an original and all of which together shall constitute one agreement, binding upon all parties hereto.

**Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp**
Engagement Agreement – April 4, 2013 – Page 10

    c.    It is understood and agreed that Advisor is an independent contractor of the Company, and neither party is, nor shall be considered to be, the other's agent, partner, or fiduciary.

Advisor is not being retained hereunder to advise the Company as to the underlying business decision to consummate any Transaction or with respect to any related financing, derivative or other transaction.

    d.    Other than as set forth in the indemnification provisions of **Appendix A** hereto, nothing in this Agreement is intended to confer upon any other person (including stockholders, employees or creditors of the Company) any rights or remedies hereunder or related hereto.

    e.    Neither Advisor, nor any Indemnified Person, shall have any liability (including without limitation, liability for any losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses or disbursements) in contract, tort or otherwise to the Company, or to any person claiming through the Company, in connection with the engagement of Advisor pursuant to this Agreement and the matters contemplated hereby, except where such liability is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud or willful misconduct of Advisor.

    f.    Advisor shall have no responsibility for any act or omission by any of the Company's Representatives.

    g.    If any term, provision, covenant or restriction in this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**AGREED AND ACCEPTED:**

The Company agrees to and accepts all the terms, covenants and conditions of this **Appendix A**.

**EVERGREEN ENVIRONMENTAL HOLDINGS, INC.**
**EVERGREEN OIL, INC.**

By: _____

Name: _George Lamont_

Title: _Exec V.P._

Date: _7-Apr-13_

CONFIDENTIAL

**Evergreen Environmental Holdings, Inc. & Evergreen Oil, Inc. – Cappello Capital Corp**
Engagement Agreement – April 4, 2013 – Page 11

**Wire instructions**

| | |
|---|---|
| Account Name: | Cappello Capital Corp.<br>100 Wilshire Blvd., Suite 1200<br>Santa Monica, CA 90401 |
| Account Number: | 1601762 |
| Bank Name: | Grandpoint Bank<br>355 S. Grand Ave., Suite 2400<br>Los Angeles, CA 90071 |
| ABA Number: | 122244566 |

**EXHIBIT "2"**

# Overview of Cappello Capital Corp.

April 2013



**Austin · Beijing · Indianapolis · Los Angeles · Monterrey · Miami · New York · Seoul · Taipei · Zurich**

## Cappello Capital Corp.

▪ For over 40 years, the principals of Cappello Capital Corp. and its affiliates have been providing innovative investment banking services to public and private companies for a broad range of transactions totaling over $100 billion in over 50 countries around the globe.  Whether a client's needs are complex or conventional in nature, Cappello professionals apply their expertise to provide optimal results.



▪ We take great pride in the fact that we are not conflicted by offering trading, published research, brokerage services, individual accounts, syndicated deals or off-the-shelf products or services. Our clients receive pure, independent, objective advice and enjoy long-term relationships with our firm.



# Cappello's Mission

- Our mission, simply stated, is to assist clients in developing long-term strategic plans and evaluating and executing upon the full range of strategic and financial alternatives

| What We Offer | What That Means |
|---|---|
| Strategic and long-term approach in addressing clients' needs | Orientation in sync with our clients; not just pushing "off-the-shelf" products |
| Customized financing solutions to meet clients' needs | Targeted to the Company's needs within the context of its strategic plan, which results in optimal market reception |
| Deep experience across all facets of the capital structure | Our expertise includes: public and private equity, senior and subordinated debt, convertible instruments and structured and project financings |
| Strong relationships with a vast range of corporate and financial entities | Ability to identify opportunities and generate proprietary ideas and deal flow |
| Targeted and discreet approach | Minimal market awareness; tends to avoid business disruptions |
| Speed of execution | Decreases management time required and lessens completion risks |
| Demonstrated track record and experienced senior attention | Our professionals have successfully completed various types of financings and acquisitions in over 50 countries |



## International Experience

- Cappello and its principals have demonstrated a global capability, with a roster of clients and relationships with investors all over the world.

- Cappello's professionals are particularly knowledgeable in the area of cross-border financing transactions and have conducted business in over 50 countries.

- Alexander L. Cappello, the only two-term Chairman of the International Board of Young Presidents' Organization (YPO), led a group of more than 11,000 CEOs in over 100 countries.



*Shaded areas indicate countries where Cappello professionals have executed transactions*



# Selected Cappello Professionals

## Alexander L. Cappello, *Managing Director*

Alexander L. Cappello has led several public and private companies over the past 39 years, including Cappello Capital Corp. (Member FINRA-SIPC), a global merchant bank, whose principals have conducted over $155 billion in transactions in over 50 countries. He is a Director of The Cheesecake Factory (NASDAQ) . Formerly he was: Founder & Director of California Republic Bank (largest capitalized bank in California history); Chairman of : Inter-Tel (NASDAQ), a global technology leader in hydrogen fuel cells, Intelligent Energy, PLC (London) and Geothermal Resources Intl. (AMEX); and a Board Member of Genius Products (NASDAQ and KooKooRoo, Inc. (NASDAQ). Mr. Cappello is also a former Trustee of the University of Southern California (USC), as well as a current Director of RAND Corporation's Center for Middle East Public Policy, Center for Global Risk and Security (CGRS) and the RAND Russia Forum as well as a Board Member of the Pacific Council on International Policy. (PCIP).



Mr. Cappello is an active member of the World Presidents Organization (WPO) and Chief Executive Officers Organization (CEO). He was an active member of the Young Presidents' Organization (YPO), an exclusive global network of corporate presidents under the age of 55 and served as the only two term (2003-2004, 2004-2005) International Chairman. YPO, founded in 1950, has a membership of over 1,000 CEO members organized in over 200 chapters in 102 countries. He was a founding charter member and Chairman of the Santa Monica Bay and Bel Air Chapters, and a co-founder of the Malibu, Portugal, Russia and Beijing chapters. He also was Chairman of the International Executive Committee (2001-2002), Chairman Global Leadership Conference (2000) and Chairman at the Conference on Mergers, Acquisitions and Finance and Investing. He was Co-Chairman of the PIPES conference in New York and the Undervalued Public Company Conference for the Strategic Research Institute (SRI) in Chicago.

Mr. Cappello has been a guest lecturer at the USC, UCLA and Harvard Business Schools as well as numerous YPO, WPO, YEO and CEO International Universities and business conferences. He has been a guest speaker at University and business conferences in the following countries: U.K., Scotland, France, Italy, Spain, Greece, Turkey, Germany, Austria, Switzerland, Belgium, Norway, Sweden, the Czech Republic, Russia, Poland, South Africa, Saudi Arabia, Jordan, Qatar, Dubai, Brazil, Argentina, Peru, Chile, Mexico, China, Taiwan, Japan, Canada, and the United States. Mr. Cappello has been quoted in the Wall Street Journal, Business Week, FORBES, Dow Jones, the Los Angeles Times, and the New York Times. He is a contributing author of The New Investor Relations (Bloomberg PRESS).

He is also a contributing author of two books published and globally distributed by YPO (Young Presidents' Organization) titled, Get Connected and Making a Difference.

Mr. Cappello is currently, or was previously, a member of the following boards of directors:

- ► YPO International (Young Presidents Organization): Chairman of the International Board, 2003-2004/2004-2005
- ► University of Southern California (USC): former Board of Trustees; President, General Alumni Association - Board of Governors; Chairman, Alumni Presidents Council; Current: Board Member, Marshall School Board of Leaders; Board Member, Loker Hydrocarbon Research Institute Board
- ► RAND Corporation: Center for Middle East Public Policy (CMEPP ) - Board Member; Center for Global Risk and Security (CGRS); and the RAND Russia Forum
- ► California Republic Bank: Co-Founder, Former Board Member
- ► Pacific Council on International Policy (PCIP): Board Member
- ► Cheesecake Factory (NASDAQ): Board Member
- ► Caldera Medical: Board Member
- ► Patriot Defense Group: Advisory Board Member
- ► NCT Ventures: Advisory Board Member
- ► Marymount College of Palos Verdes: Vice Chairman, Board of Trustees
- ► Inter-Tel (NASDAQ): former Chairman of the Board
- ► Intelligent Energy Holdings plc (London): former Chairman, Director
- ► Geothermal Resources International (AMEX): former Chairman, Director
- ► Arcus Data Security, Inc. (NASDAQ): former Board Member
- ► Koo Koo Roo, Inc. (NASDAQ): former Board Member
- ► CytRx Corporation (NASDAQ): former Board Member
- ► Advanced Biotherapy, Inc. (OTC): former Chairman, Director
- ► Benitec, Ltd. (ASX – Sydney, Australia): former Board Member
- ► Australian Cancer Ltd. (ASX - Sydney, Australia): former Board Member
- ► Genius Products, Inc. (NASDAQ): former Board Member
- ► Council on Foreign Relations (Washington, DC): lifetime member
- ► City of Hope: Board of Trustee, Chairman - Investment Committee
- ► Jordan River Foundation (Amman, Jordan): Board of Trustee
- ► Biller Family Foundation: Board Member
- ► Friends of Florence (Florence, Italy): Board Member
- ► ALS Therapy Development Foundation: Board Member

Mr. Cappello received a Bachelor of Science degree from the Marshall School of Business at USC in 1977 with honors, including recognition as an "Order of the Palm" scholar. He received an Honorary Doctorate of Humanities from Goodwin College in Stamford, Connecticut and has been inducted in the Order of Honorary Fellows at Marymount College in Palos Verdes, California. Mr. Cappello gave the commencement address to the Marshall School of Business graduates at USC in June 2008. In his free time, he enjoys travel, world affairs, art and culture; collecting fine wines, antiques and books; and engaging in shooting, hunting, fishing and art preservation. Mr. Cappello was recently named Father of the Year by the American Diabetes Association and Recipient of the Robert Ross Founder's Award by the Muscular Dystrophy Association. In 2006, YPO honored him by naming one of its highest global recognition awards the Alexander L. Cappello Annual Award.



CAPPELLO
CAPITAL CORP.
INVESTMENT BANKERS
FINRA SIPC    www.cappellocorp.com

# Selected Cappello Professionals

## Rob Deutschman, *Managing Director – Cappello Capital Corp.*



Rob Deutschman has specialized in investment and merchant banking activities for over 22 years, with a particular emphasis on executing private placements of institutional capital for growing public and private companies. Mr. Deutschman's ability to deliver financing solutions to companies facing complex circumstances is enhanced by his experience as a founder and operator of companies and his background advising and accessing capital for distressed companies.

Mr. Deutschman's diverse background includes venture capital law, entertainment, real estate, financial services, service industry operations, and restructurings and workouts. Mr. Deutschman serves as the Vice Chairman of the Board of Directors of Enron Creditors Recovery Corp.

Mr. Deutschman formerly served on the Board of First Bank of Beverly Hills F.S.B. and has formerly served as a member of the Board of Directors of Beverly Hills Bancorp Inc.(NASDAQ:BHBC). Mr. Deutschman also serves on the boards of the RAND Center for Corporate Ethics and Governance and MPG Office Trust (NYSE: MPG), the largest holder of Class A office property in downtown Los Angeles. Mr. Deutschman serves on the Executive Committee of the Water Buffalo Club, a Los Angeles-based charity that fulfills the tangible, lasting wishes of various children's charities. He is a former member of the Santa Monica Chapter of the Young Presidents' Organization.

Prior to joining Cappello, Mr. Deutschman was a Managing Director of Saybrook Capital Corp. where he focused on corporate finance, venture capital, real estate and defaulted/troubled municipal bond issues and related workouts and restructurings. Previously, he was a principal of Cheviot Capital Corporation, a financial advisory and investment firm specializing in bankruptcy, insolvency and distressed situations, which was sold to Houlihan Lokey in 1988, commencing the formation of Houlihan's Financial Restructuring Group. Mr. Deutschman subsequently became a Senior Vice President and Director of Principal Investments of Houlihan's Public Finance Group, focusing on the workout and restructuring of troubled real estate assets. Mr. Deutschman began his career in 1982 as a practicing attorney with Gibson, Dunn & Crutcher in Los Angeles.

Mr. Deutschman earned his undergraduate degree, with honors, in political science at Haverford College and his law degree from Columbia University School of Law, where he was a Harlan Fiske Stone Scholar. Born and raised in New York City, Mr. Deutschman is an active participant in a variety of sports, and is an avid fan of New York sports teams.

## Sean DP Kelly, *Managing Director – Cappello Capital Corp.*



Sean Kelly has twenty years of experience as a financial professional, the last fifteen of which have been spent in investment banking. Over the course of his investment banking career, he has advised dozens of public and private companies operating in a wide range of industries in the execution of M&A, equity and debt transactions. Mr. Kelly has advised clients across the U.S. and internationally, including Eastern and Western Europe, Latin America, Asia and the Middle East. Before joining Cappello, Mr. Kelly worked as a corporate finance analyst at the Menlo Park office of DMG Technology Group, the Deutsche Bank technology investment banking group led by Frank Quattrone. At Deutsche Bank, Mr. Kelly worked primarily with clients in the semiconductor, software and communications industries.

Prior to joining Deutsche Bank, he worked as an M&A analyst with Alex. Brown & Sons in San Francisco. At Alex. Brown, Mr. Kelly focused on financial institutions, including commercial banks, real estate investment trusts and specialty finance companies Mr. Kelly serves on the Board of Directors of MMGY Global, the largest fully-integrated travel and hospitality marketing firm in the U.S. He also serves as an advisor to Waterfall Mobile, a leader in on-demand enterprise mobile marketing and communication. Mr. Kelly serves actively on the Board of Directors of the Boys & Girls Clubs of the Austin Area and College Forward, a non-profit organization that provides college access and college persistence services to motivated, economically disadvantaged students. He is a member of The Fifty, an affiliate of the Seton Fund, and the founder of Professional Veterans of America, a non-profit network of veterans helping veterans succeed through mentorship, education and information exchange.

Prior to entering investment banking, Mr. Kelly was an operations manager and financial analyst for Phillips Associates, a management consulting firm specializing in strategic planning and organizational change for Fortune 500 companies. Before that, he worked as a research assistant at Pondel Wilkinson, a leading investor relations consulting firm. Mr. Kelly began his career by serving honorably in the U.S. Army as a finance specialist, stationed at Fort Dix, New Jersey and Schoefield Barracks, Hawaii.

Mr. Kelly earned a Bachelor of Science degree in Business Administration with an emphasis in Finance from the University of Southern California Marshall School of Business. He continues to contribute to USC and serve as a mentor and adviser to both undergraduate and graduate students. In his free time, Mr. Kelly enjoys travel, wakeboarding, live music and reading.



# Selected Cappello Professionals

## Cary Meadow, *Managing Director – Cappello Group, Inc.*



Cary Meadow has over 17 of experience in the investment business, including serving as a senior private equity professional, chief executive of a specialty finance firm, and corporate attorney. In those capacities, he has helped guide numerous companies through endeavors ranging from corporate finance, new business development, restructuring and M&A. In particular, Mr. Meadow has had industry expertise in financial services, transportation, energy, media, education and consumer products.

Mr. Meadow was the Chief Executive Officer of Annuity Capital Company, a portfolio company of Pegasus Capital Advisors, from its inception until joining Cappello in the Fall of 2010. Mr. Meadow joined Pegasus as an Operating Advisor in 2008.

Previously, Mr. Meadow served from 2001 until 2008 as the Head of Mergers & Acquisitions for k1 Ventures, Ltd., a publicly-traded investment company listed on the Singapore Stock Exchange, where he was responsible for sourcing transactions, negotiating financings, and identifying and implementing strategic growth initiatives for K1 portfolio companies. Prior to k1, Mr. Meadow served as Senior Vice President of Pacific Capital Group, a Los Angeles-based private equity firm, from 1999-2001. Mr. Meadow previously was the Head of Corporate Development and Business Affairs for The Telemundo Network Group, a Spanish-language television network, prior to its acquisition by NBC, a division of General Electric. Mr. Meadow began his career as a corporate transactional attorney focused on the media industry for Hill Wynne Troop.

Mr. Meadow serves actively on the Executive Committee of the Board of Governors of Cedar-Sinai Medical Center and several of its investment-related committees, and is the Chairman of the Finance Committee of the Phase One Cancer Foundation. Mr. Meadow has served on numerous Boards of Directors, including Deerfield Capital Management, Annuity Capital Company, Savi Networks, Good Technologies, and Paetec Communications.

Mr. Meadow graduated with a B.B.A in Finance from The University of Texas – Austin in 1991 and received his J.D. from the University of Southern California Law Center in 1994, where he was the Judge Dorothy Wright Nelson Distinguished Scholar.

## J. Randall Waterfield, *Managing Director - Cappello Capital Corp.*



J. Randall Waterfield, along with his brother, Richard R. Waterfield, have participated in the supervision of Waterfield Group, which includes Waterfield Enterprises, The Waterfield Funds, and registered investment advisor, Waterfield Asset Management.

Mr. Waterfield is a director of Asure Software (NASDAQ: ASUR), the Culver Military Summer Academy, former chairman and current director and executive committee member of the Young Presidents' Organization New York City, among other board positions further detailed below. Prior to joining Waterfield Group, Mr. Waterfield was employed by Goldman Sachs Asset Management, where he was responsible for the small cap growth portfolios.

Prior to his employment with Goldman, Sachs, & Co., Mr. Waterfield trained at Fidelity Investments in Boston, and Prudential Securities in New York. Mr. Waterfield is currently, or was previously, a member of the following boards of directors: Waterfield Group, Waterfield Enterprises, Waterfield Asset Management, Waterfield Private Equity Fund(s) I,II, & III, Waterfield Technologies, Waterfield Energy, Affinity Financial Corporation, National InterBank, Waterfield Financial Services, Young Presidents Organization New York City, Asure Software (NASDAQ), Culver Military Summer Academy, The Rate Report, Cappello, Waterfield & Co., Fife, Waterfield & Co.

Through the Waterfield Foundation, Mr. Waterfield supports a variety of environmental and Midwestern based causes and he has been a frequent guest on CNBC, MSNBC, Fox News, and CNN Radio. He has been quoted in numerous publications, including the Wall Street Journal, The Los Angeles Times, The San Francisco Examiner, The Orange County Register, and American Banker, among others.

Mr. Waterfield graduated from Harvard University in 1996. He is a member of MENSA and holds the Chartered Financial Analyst designation (CFA).



# Selected Cappello Professionals

| **Rolando Pozos-Villarreal,** *Managing Director – Cappello Capital Corp.* | **Paul Kromwyk,** *Senior Vice President – Cappello Capital Corp.* |
|---|---|

Rolando Pozos-Villarreal is a Managing Director and has investment banking and business experience of over 14 years. He specializes in capital raising, mergers and acquisitions and other strategic advisory transactions across multiple industries. Rolando has a particular expertise in Latin American and Hispanic oriented middle-market firms both privately and publicly owned.



In his former position as Head of Latin America at Bear Stearns a, division of JP Morgan in Los Angeles, he led the efforts to introduce the Bear Stearns' private client services platform in Mexico to serve corporations, broker dealers and institutional clients. Rolando originated and completed several public and private transactions in Latin America for industrial, food & beverage, financial services and real estate companies.

Rolando's investment banking experience at Bear Stearns includes a variety of sell and buy-side transactions in the United States and Asia.

Prior to Bear Stearns, Rolando worked at Deloitte & Touche Corporate Finance in Los Angeles for the firm's industrials team and was focused in M&A transactions for global manufacturing companies. Prior to Deloitte, Rolando worked at Ernst & Young Corporate Finance in Los Angeles in projects involving acquisitions, divestitures and capital raising for U.S. firms in the telecommunications, healthcare and manufacturing industries. Before becoming an investment banker he worked in Monterrey Mexico at Deacero, the 3rd largest steel-wire producer in the world, as an exports & strategy manager. He led Deacero's sales strategy area and the two-year reengineering process for its international operations.

Rolando is often invited to participate as a panelist in several Latin American and Hispanic business forums in both Mexico and U.S. Rolando was the founder of "Nostra Causa", a private organization supporting programs to aid homeless children in Mexico. He is an active member of the World Education & Development Fund in New York which sponsors educational programs for children in Latin America. Rolando holds a MBA from the Marshall School of Business at the University of Southern California with a major in Corporate Finance, Financial Markets & Investments. Rolando also holds a Bachelor of Science degree in Industrial and Systems Engineering from the I.T.E.S.M. (Tec de Monterrey).

Rolando was born in Monterrey Mexico and has lived in Los Angeles since 2001. He is an avid traveler and practices a variety of water sports.

Paul Kromwyk has specialized in investment banking and consulting activities for over 15 years, with a particular emphasis on executing mergers & acquisitions and financing transactions for both public and private companies. Mr. Kromwyk has worked at a senior level in investment banking in both the U.S. and Australia and has advised clients in a broad array of industries and product groups including financial institutions, media and entertainment, technology, consumer/retail, mining services, private equity and equity & debt capital markets.



Prior to joining Cappello, Mr. Kromwyk was a Senior Advisor for McCafferty & Company, an investment banking boutique in Los Angeles where he advised and raised capital primarily for clients in media/entertainment and technology industries.

Prior to joining McCafferty, Mr. Kromwyk was based in Sydney, Australia where he worked for Greenhill as a Vice President. While at Greenhill, Mr. Kromwyk advised Australia's leading corporations across a wide array of industries. Notable transactions included advising Westpac Banking Corporation on its $17B merger with St. George Limited; advising private equity firm Champ Ventures on its sale of portfolio company, Amdel Holdings Ltd; and advising Mincom Limited, on its sale to US-based private equity buyer Francisco Partners.

Mr. Kromwyk began his investment banking career at Credit-Suisse in New York in the Financial Institutions Group. Prior to Credit-Suisse, Mr Kromwyk began his professional career with LEK Consulting, where he worked on a range of strategic advisory and financial valuation projects.

Mr. Kromwyk received an M.B.A. from the Harvard Business School. He has also completed a combined Bachelor of Commerce (Hons) and a LLB (Hons) from the University of Queensland, Australia and was a winner of the University Medal. In addition, Mr. Kromwyk has completed several professional course subjects with the Financial Services Institute of Australasia (FINSIA) including "Mergers & Acquisitions".

In his free time, Mr. Kromwyk enjoys road cycling, swimming, triathlons, mountaineering and travel. Mr. Kromwyk is also a member of the Los Angeles chapters of the American Australian Association and Advance and is active in the Los Angeles Australian community.



# Cappello Advisory Board

**David Booth**, CEO
Dimensional Fund
Benefactor of the
Booth School of Business
University of Chicago



**Honorable Alexander Downer**
Former Foreign Minister
of Australia



**Thomas Gilligan**, Dean
McCombs School of Business
University of Texas



**Dr. Jerrold Green**, President
Pacific Council on
International Policy



**Jarl Mohn**, Chairman CNET
Former CEO, Liberty Digital
Creator, Former  President & CEO
of E-Entertainment Television



**Dr. Chrysostomos L. Max
Nikias**, President
University of Southern
California



**Rob Rodin**, Chairman & CEO
RDN Group
Former CEO, Marshall Industries





CAPPELLO
CAPITAL CORP.
INVESTMENT BANKERS
www.cappellocorp.com

# Selected Clients





















ACC Telecom
Advanced Tissue Sciences
Arcus Data Storage
Axium International
BCG Investment Corp.
BLC Leasing Corp.
Casmyn Corp.
Commodore Applied Technologies
CornerHardware.com
Cumming LLC
Cypros Pharmaceutical Inc.
Ecogen, Inc.
Dynasty Classics, Inc.
Elco Freight International
eMagin Corporation
Executive Publications / M.F.C.
E.M. International
E.M. Genuine
Evoke, Inc.
Geothermal Resources Intl.
Geothermal Power / PGE
Geo East Mesa L.P.
Global Finance N.V.
Global Capital N.V.
Grey Rock / MCI
Grupo Elektra N.V.

Imclone Systems Inc.
Interferon Sciences
Interneuron Pharmaceuticals
Koo Koo Roo
Latrobe Steel
Leather, Inc.
M.P. Mexico, LLC
Neoprobe Corp.
Newer Technology Inc.
NorthWestern Corporation
Orfa Corp of America
Pharmos Corporation
PHP Healthcare Corporation
Pure Tech International, Inc.
Quarterdeck Software
Roberts Pharmaceuticals
Safeconnect.com
So-Cal Cinemas
Sun Computers, Inc.
Summa Medical Corporation
Swiss American Financial
Softnet Systems, Inc.
Staub Metals
The Right Start, Inc.
Todhunter International
X:Drive



# Selected Tombstones

**$400,000,000**

Acquisition of

*Geothermal Resources International*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$275,000,000**

Convertible Preferred Restructuring

**$96,600,000**

Senior Note Restructuring

*WHX Corp.*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$285,000,000**

Debt Commitment

*BCG Investment Corp./ CWC*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$250,000,000**

Equity Commitment



*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$215,000,000**

Acquisition of



*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$155,000,000**

Debt for Sale-Leaseback Financing of Geothermal Assets

*Geo East Mesa L.P.*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$150,000,000**

Project Finance Debt/Equity Commitment

*ORFA Corp. of America*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$140,000,000**

Restructuring

*G.E.M.L.P. / Pacificorp*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$130,000,000**

Debt / Equity Commitment

*Western Energy Corp.*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$120,000,000**

Acquisition of Assets



*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$110,000,000**

Option to acquire Series A, B, L Common Stock



*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**JSTAR Holdings**

Has acquired the assets of



*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---



Has been formed through the merger of

 and

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---



Saybrook Corporate Opportunity Fund, L.P. has acquired



*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**Over $50,000**

Acquisition of Assets

*Oil & Gas Assets Held by a Large, U.S.-Based Public Oil & Gas Company*

Have been acquired by a

*Private Kentucky-Based Oil & Gas Company*

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---

**$40,000,000**

Senior Secured Credit Facility



Capital Raise Debt Refinancing

*The undersigned acted as exclusive financial advisor in this transaction*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---



Has been acquired by



*The undersigned acted as exclusive financial advisor to Pulmuone Holding Co. Ltd.*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---



Has completed a minority equity recapitalization with



*The undersigned acted as exclusive financial advisor to IrisGuard, Inc.*

CAPPELLO
CAPITAL CORP.
FINRA-SIPC

---



CAPPELLO CAPITAL CORP.
INVESTMENT BANKERS
www.cappellocorp.com

# Case Study: Evergreen Holdings, Inc.



**Cappello continues to serve as Evergreen's financial and strategic advisor.**

**TRANSACTION**

- Guggenheim Corporate Funding, LLC ("Guggenheim") provided a new senior secured credit facility to Evergreen Oil, Inc., a wholly owned subsidiary of Evergreen Holdings, Inc. (collectively "Evergreen" or "the Company") in the amount of $40 mm, with a maturity date of one year.
- This loan enabled Evergreen to retire the existing loan from Bank of the West ("BOW") (including fees, penalties, interest, etc.) for $26 mm, representing a $1.9 mm, or 7%, discount to the face value of the amount outstanding.
- In addition, the Evergreen loan provided a short term solution to inexpensively cash collateralize Evergreen's existing Letter of Credit facility and provide sufficient working capital to meet immediate payment obligations.

**CLIENT**

- Evergreen operate an oil re-refinery facility located in Newark, California.
- The Company is the only true re-refiner of used oil in California and it re-refines approximately 11% of the State's waste oil and has also successfully licensed its plant systems internationally and domestically.

**SITUATION**

- Since 2005, BOW provided credit facilities to Evergreen for its working capital needs. However, Evergreen recently went into default and incurred additional penalties and interest.
- The Company's cash flow was impacted by an accidental fire at its Newark facility on March 29, 2011 that affected both processing trains, limiting its operations and revenue generation.
- The Company's founder, Jake Voogd, has been wanting to sell the Company, however faced a liquidity crisis which made it difficult to receive a favorable valuation due to the perception of distress.

**SOLUTION**

- Cappello advised Evergreen on the refinancing of its existing debt via Guggenheim.
- The solution provided approximately $450,000 of additional monthly cash flow since interest now accrued as PIK interest with nominal cash interest payments, in contrast to the BOW loan which was solely cash interest.
- The proceeds will enable the Company to get operations up and running again so that a non-distressed sale process can be undertaken, which is vital in achieving maximum valuation.
- Jake Voogd was released from his personal guaranty to BOW.
- New Guggenheim debt covenants and conditions were not as stringent as those that were in place with BOW.



# Selected Transaction History

| Company | Size ($MM) | Sector | Transaction Type |
|---|---|---|---|
| Amdel Limited | ND | Business Services | M&A - sell-side |
| Cumming, LLC | ND | Business Services | M&A - sell-side |
| Detection Logic Fire Protection, Inc | $135 | Business Services | M&A - sell-side |
| Staffworks, Inc. | ND | Business Services | M&A - sell-side |
| WASH Multifamily Laundry Systems, LLC | $500 | Business Services | M&A - sell-side |
| Agri International | $250 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Agri International | ND | Consumer Products/Services/Retail/Food | Financial Advisory |
| Altus Corporation | $40 | Consumer Products/Services/Retail/Food | Senior Notes |
| Ameriqual | $105 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Ameriqual | $210 | Consumer Products/Services/Retail/Food | M&A |
| AmRest Holdings N.V. | ND | Consumer Products/Services/Retail/Food | Strategic Advisory |
| Bakrie Sumatera Plantations | $50 | Consumer Products/Services/Retail/Food | Senior Secured Debt |
| Bakrie Sumatera Plantations | $110 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Batteries Plus, LLC | $79 | Consumer Products/Services/Retail/Food | M&A: Sell-side |
| Bob's Discount Furniture | $125 | Consumer Products/Services/Retail/Food | M&A:  Sell-Side |
| Coffees of Hawaii | $5 | Consumer Products/Services/Retail/Food | Equity private placement |
| Color Spot Nurseries | $65 | Consumer Products/Services/Retail/Food | Bank Loan |
| Corazonas Foods | ND | Consumer Products/Services/Retail/Food | M&A: Sell-side |
| Corrections Corp | $150 | Consumer Products/Services/Retail/Food | Senior Notes |
| Crescent Jewelers | $114 | Consumer Products/Services/Retail/Food | Chapter 11 Restructuring |
| Dynasty Classics, Inc. | $30 | Consumer Products/Services/Retail/Food | Equity private placement |
| E.M. by Emanuel Genuine Leather, Inc. | $10 | Consumer Products/Services/Retail/Food | Equity private placement |
| E.M. International | $10 | Consumer Products/Services/Retail/Food | Equity private placement |
| Elektra | $110 | Consumer Products/Services/Retail/Food | Equity private placement |
| FAO, Inc. | $115 | Consumer Products/Services/Retail/Food | Senior debt |
| FAO, Inc. | $100 | Consumer Products/Services/Retail/Food | Strategic advisory / M&A - sell-side |
| FAO, Inc. | $20 | Consumer Products/Services/Retail/Food | Equity private placement |



# Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
|---|---|---|---|
| Flexirent | ND | Consumer Products/Services/Retail/Food | Strategic Advisory |
| Flight Centre Limited | $135 | Consumer Products/Services/Retail/Food | M&A - buy-side + Equity placement |
| General Media Fine Arts, Inc. | $27 | Consumer Products/Services/Retail/Food | Senior debt |
| Grill Concepts, Inc. | $15 | Consumer Products/Services/Retail/Food | Convertible preferred |
| IdleAire Corporation | $235 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Kings Super Markets, Inc. | $30 | Consumer Products/Services/Retail/Food | Bank Debt |
| Koo Koo Roo Enterprises, Inc. | $33 | Consumer Products/Services/Retail/Food | Equity private placement |
| Koo Koo Roo Enterprises, Inc. | $30 | Consumer Products/Services/Retail/Food | Equity private placement |
| Kraft Foods, Inc. | $70 | Consumer Products/Services/Retail/Food | M&A - sell-side |
| Legacy Estate Group, LLC | $97 | Consumer Products/Services/Retail/Food | Asset sale |
| Oriental Trading Company | $400 | Consumer Products/Services/Retail/Food | Restructuring |
| Pulmuone Holdings Co., Ltd. | $46 | Consumer Products/Services/Retail/Food | M&A - buy-side |
| Ronco Corporation | $7 | Consumer Products/Services/Retail/Food | Asset sale |
| So-Cal Cinemas | $16 | Consumer Products/Services/Retail/Food | Senior debt |
| Todhunter International, Inc. | ND | Consumer Products/Services/Retail/Food | Equity private placement |
| United Maritime Group | $310 | Consumer Products/Services/Retail/Food | Bank Debt |
| Vector Group | $90 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Vector Group | $75 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Vector Group | $85 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Vector Group | $165 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Viskase | $40 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Viskase | $175 | Consumer Products/Services/Retail/Food | Senior Secured Notes |
| Woolworths Limited | NA | Consumer Products/Services/Retail/Food | Strategic advisory |
| Yes! Entertainment Corp. | $12 | Consumer Products/Services/Retail/Food | Restructuring |
| BCG Investment Corp. / CWC | $285 | Energy | Senior debt |
| Evergreen Oil Inc. | $40 | Energy | Senior Debt |
| G.E.M.L.P. / Pacificorp | $140 | Energy | Restructuring |



# Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
|---|---|---|---|
| Geo East Mesa L.P. | $155 | Energy | Senior debt |
| Geo East Mesa L.P. | $109 | Energy | Senior debt |
| Geo East Mesa L.P. | $96 | Energy | Senior debt |
| Geo East Mesa L.P. | $23 | Energy | Equity private placement |
| Geothermal Resources International | $400 | Energy | M&A - buy-side |
| Geothermal Resources International | $37 | Energy | Equity private placement |
| Gexa Corp. | $15 | Energy | Senior debt |
| National Coal | $50 | Energy | Senior Secured Notes |
| Pro Petro | $165 | Energy | Bank Debt |
| Western Energy Corp. | $130 | Energy | Equity private placement |
| White Energy | $200 | Energy | Restructuring |
| AmericanWest Bank | $185 | Financial Institutions | M&A - sell-side |
| Ares Capital Corporation | $224 | Financial Institutions | Common Stock |
| Ares Capital Corporation | $168 | Financial Institutions | Common Stock |
| BAC International | ND | Financial Institutions | M&A - sell-side |
| Bank of Queensland Limited | $200 | Financial Institutions | Equity private placement |
| Barclays Americas Private Banking | $70 | Financial Institutions | M&A - sell-side |
| BT Investment Management | $700 | Financial Institutions | IPO |
| CalFed, Inc. | ND | Financial Institutions | Restructuring |
| Cheviot Capital | ND | Financial Institutions | M&A - sell-side |
| Collegiate Funding Services | $150 | Financial Institutions | IPO |
| Credit Store, Inc. | $1 | Financial Institutions | Equity private placement |
| Gibraltar Financial Corp. | $40 | Financial Institutions | Convertible debt |
| Gibraltar Financial Corp. | $18 | Financial Institutions | Convertible debt |
| Hanmi Financial Corp. | $210 | Financial Institutions | Fairness opinion |
| Hanmi Financial Corp. | $120 | Financial Institutions | Equity offering |
| Hibernia | $230 | Financial Institutions | M&A - buy-side |


CAPPELLO
CAPITAL CORP.
INVESTMENT BANKERS

# Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
|---|---|---|---|
| Hibernia | $100 | Financial Institutions | Subordinated Debt |
| Marshall & Ilsley | NA | Financial Institutions | Fairness Opinion |
| Marshall & Ilsley | $145 | Financial Institutions | M&A - buy-side |
| Mortgage Guaranty Insurance Corporation | ND | Financial Institutions | M&A - buy-side |
| Protective Life | ND | Financial Institutions | M&A - sell-side |
| Refco | $2,400 | Financial Institutions | M&A - sell-side / Recapitalization |
| Refco | $875 | Financial Institutions | Senior Debt |
| Refco | $600 | Financial Institutions | Subordinated Debt |
| Visa, Inc. | $250 | Financial Institutions | Acquisition |
| Westpac Banking Corporation | $15,000 | Financial Institutions | M&A - buy-side |
| Wilshire Financial Services Group | ND | Financial Institutions | Restructuring |
| Advanced Biotherapy | ND | Healthcare/Pharma/Biotech | Strategic Advisory |
| Advanced Tissue Sciences, Inc. | $22 | Healthcare/Pharma/Biotech | Equity private placement |
| City of Ridgeland, MS | $11 | Healthcare/Pharma/Biotech | Restructuring/private placement |
| Cypros Pharmaceuticals Inc. | ND | Healthcare/Pharma/Biotech | Equity private placement |
| CytRx Corporation | $20 | Healthcare/Pharma/Biotech | M&A - buy-side |
| CytRx Corporation | $9 | Healthcare/Pharma/Biotech | Equity private placement |
| CytRx Corporation | $5 | Healthcare/Pharma/Biotech | Equity private placement |
| Ecogen Inc. | ND | Healthcare/Pharma/Biotech | Equity private placement |
| Health Plan Holdings | $53 | Healthcare/Pharma/Biotech | Senior Notes |
| Health Plan Holdings | $125 | Healthcare/Pharma/Biotech | Bank Debt |
| ImClone Systems Inc. | ND | Healthcare/Pharma/Biotech | Equity private placement |
| Indevus Pharmaceuticals, Inc. | ND | Healthcare/Pharma/Biotech | Equity private placement |
| Interferon Sciences, Inc. | ND | Healthcare/Pharma/Biotech | Equity private placement |
| Medibank Private (Australia) | NA | Healthcare/Pharma/Biotech | Strategic advisory |
| Neoprobe Corp. | ND | Healthcare/Pharma/Biotech | Equity private placement |
| OraVax | $8 | Healthcare/Pharma/Biotech | Equity private placement |



## Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
| --- | --- | --- | --- |
| Pharmos Corporation | ND | Healthcare/Pharma/Biotech | Equity private placement |
| PHP Healthcare Corporation | $70 | Healthcare/Pharma/Biotech | Equity private placement |
| Primedex Health Systems | $210 | Healthcare/Pharma/Biotech | M&A |
| RadNet Inc. | $200 | Healthcare/Pharma/Biotech | Senior Notes |
| ResCare | $150 | Healthcare/Pharma/Biotech | Senior Notes |
| Roberts Pharmaceuticals Corp. | $105 | Healthcare/Pharma/Biotech | Equity private placement |
| Roberts Pharmaceuticals Corp. | $10 | Healthcare/Pharma/Biotech | Equity private placement |
| Senior Lifestyles, Inc. | $16 | Healthcare/Pharma/Biotech | Restructuring/private placement |
| Techniclone Corporation | $13 | Healthcare/Pharma/Biotech | Equity private placement |
| Ameron International | $800 | Industrial | M&A: Sell-side |
| ASC Limited | ND | Industrial | Strategic advisory |
| AT Systems | $30 | Industrial | Senior debt |
| DRS Technologies | $600 | Industrial | Senior Notes |
| Elco Freight | $11 | Industrial | Senior debt |
| Eldorado Stone | $203 | Industrial | M&A: Sell-Side |
| Evergreen Holdings, Inc. | $40 | Industrial | Senior debt |
| Ft. Dearborn Paper | $110 | Industrial | Bank Debt/M&A |
| Latrobe Steel | $215 | Industrial | M&A - buy-side |
| Metals USA | $1,000 | Industrial | Fairness Opinion |
| New Venture Gear | $400 | Industrial | M&A - sell-side |
| Qantas Limited | ND | Industrial | Strategic advisory |
| Staub Metals Corp. | $7 | Industrial | Senior debt |
| Terphane | $30 | Industrial | Senior Secured Notes |
| Transfield Limited | ND | Industrial | Strategic advisory |
| T-Systems International, Inc. | $85 | Industrial | M&A: Sell-side |
| WHX Corp. | $275 | Industrial | Restructuring |
| WHX Corp. | $97 | Industrial | Restructuring |
| Kensington Vanguard | ND | Insurance | Recapitalization |



# Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
|---|---|---|---|
| CP Ships | $2,000 | Logistics/Shipping | M&A: Sell-Side |
| Total Transportation Services, Inc. | ND | Logistics/Shipping | Buyout |
| Executive Publications | $12 | Media/Entertainment | Equity private placement |
| Executive Publications | $10 | Media/Entertainment | M&A - sell-side |
| Genius Products | ND | Media/Entertainment | M&A - buy-side |
| Genius Products | ND | Media/Entertainment | Strategic Advisory |
| Genius Products | $10 | Media/Entertainment | Equity private placement |
| Genius Products | $5 | Media/Entertainment | Equity private placement |
| MMGY | ND | Media/Entertainment | M&A - buy-side |
| NTN Communications Inc. | $12 | Media/Entertainment | Equity private placement |
| WavePhore | $37 | Media/Entertainment | Equity private placement |
| Royal Gold Inc. | $58 | Metals & Mining | Accelereated Follow-On Offering |
| Futuris Limited | NA | Other | Strategic advisory |
| Leucadia National Corp | $500 | Other | Senior Notes |
| Leucadia National Corp. | $500 | Other | Senior Notes |
| Leucadia National Corp. | $250 | Other | Common Stock |
| Alto Palenno | $125 | Real Estate/Leisure/Gaming | Senior Notes |
| Apartment Investment Management Co. | $26 | Real Estate/Leisure/Gaming | Restructuring |
| BRE Properties, Inc. | $113 | Real Estate/Leisure/Gaming | Equity offering |
| Canongate Golf Clubs | ND | Real Estate/Leisure/Gaming | Equity private placement |
| Canongate Golf Clubs | ND | Real Estate/Leisure/Gaming | Equity private placement |
| Canongate Golf Clubs | ND | Real Estate/Leisure/Gaming | M&A - buy-side |
| Canongate Golf Clubs | ND | Real Estate/Leisure/Gaming | Senior debt |
| Casa Grande Holiday Inn | $4 | Real Estate/Leisure/Gaming | Restructuring/private placement |
| City of Fort Collins, ID | $3 | Real Estate/Leisure/Gaming | Restructuring/private placement |
| City of Henderson, NV | $12 | Real Estate/Leisure/Gaming | Restructuring/private placement |
| City of Kasaan, AK | $26 | Real Estate/Leisure/Gaming | Restructuring/private placement |



CAPPELLO
CAPITAL CORP.
INVESTMENT BANKERS

# Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
|---|---|---|---|
| Extended Stay | $3,925 | Real Estate/Leisure/Gaming | Restructuring |
| LaCrosse Holiday Inn | $16 | Real Estate/Leisure/Gaming | Restructuring/private placement |
| Legacy Estate Group | $96 | Real Estate/Leisure/Gaming | M&A: Section 363 Asset Sale |
| Macau Gaming | N/A | Real Estate/Leisure/Gaming | Advisory |
| Park Inn | $10 | Real Estate/Leisure/Gaming | Restructuring/private placement |
| Trump Entertainment Resorts | $2,200 | Real Estate/Leisure/Gaming | Chapter 11 Restructuring |
| Warner Estate Holdings plc | $356 | Real Estate/Leisure/Gaming | Acquisition |
| ACC Telecommunications | $11 | Technology/Communications | Equity private placement |
| Advanced Promotion Technologies, Inc. | ND | Technology/Communications | Equity private placement |
| Andover Controls | $403 | Technology/Communications | M&A: Sell-Side |
| Arcus Data Storage | $34 | Technology/Communications | M&A - buy-side |
| Aspect Communications | $490 | Technology/Communications | Convertible debt |
| Com21 | $69 | Technology/Communications | Initial public offering |
| Commodore Applied Technologies, Inc. | ND | Technology/Communications | Equity private placement |
| Diceon Electronics | $28 | Technology/Communications | Initial public offering |
| eMagin | ND | Technology/Communications | M&A - buy-side |
| Evoke, Inc. | ND | Technology/Communications | Equity private placement |
| Expanets, Inc | $25 | Technology/Communications | Senior debt |
| Fibercomp | $5 | Technology/Communications | Equity private placement |
| Global Marine Systems | £40.00 | Technology/Communications | M&A: Sell-Side |
| Intelligent Energy | ND | Technology/Communications | Strategic Advisory |
| Intelligent Energy | $15 | Technology/Communications | Equity private placement |
| Intelligent Energy | $9 | Technology/Communications | Equity private placement |
| Intelligent Energy Multi | ND | Technology/Communications | Strategic Advisory |
| Interleaf | $8 | Technology/Communications | Equity private placement |
| International Computer Materials Exchange | $5 | Technology/Communications | Restructuring |
| IrisGuard | $10 | Technology/Communications | Equity private placement |



# Selected Transaction History (continued)

| Company | Size ($MM) | Sector | Transaction Type |
| --- | --- | --- | --- |
| M.P. Mexico, L.L.C. | ND | Technology/Communications | Equity private placement |
| Magnaco | $5 | Technology/Communications | Restructuring |
| Mincom Limited | $275 | Technology/Communications | M&A - sell-side |
| NHC Communications Inc. | $2 | Technology/Communications | Equity private placement |
| Optel, Inc. | $1 | Technology/Communications | Equity private placement |
| ORFA Corp. of America | $150 | Technology/Communications | Equity private placement |
| ORFA Corp. of America | $33 | Technology/Communications | Convertible debt |
| ORFA Corp. of America | $20 | Technology/Communications | Convertible debt |
| ORFA Corp. of America | $14 | Technology/Communications | Senior debt |
| ORFA Corp. of America | $14 | Technology/Communications | Senior debt |
| Prins Recycling Corp. | ND | Technology/Communications | Equity private placement |
| Pure Tech International, Inc. | ND | Technology/Communications | Equity private placement |
| Quarterdeck Corp. | $29 | Technology/Communications | Equity private placement |
| Ramtron International Corp. | $21 | Technology/Communications | Equity private placement |
| ScanSoft, Inc. | $6 | Technology/Communications | Equity private placement |
| Smart Start, Inc. | ND | Technology/Communications | Debt Recapitalization |
| Softnet Systems, Inc. | ND | Technology/Communications | Equity private placement |
| Spescom Software, Inc. | ND | Technology/Communications | Equity private placement |
| Summa Medical Corporation | $12 | Technology/Communications | Restructuring |
| Sun Computers | $50 | Technology/Communications | Restructuring |
| Swiss American Capital Corp. | $17 | Technology/Communications | Equity private placement |
| The Gores Group LLC | $200 | Technology/Communications | M&A: Sell-side |
| Unefon, S.A. de C.V. | $250 | Technology/Communications | Equity private placement |





FINRA | SIPC

**100 Wilshire Blvd., Suite 1200**
**Santa Monica, CA 90401**
**Phone: 310-393-6632**
**Fax: 310-393-4838**
**www.cappellocorp.com**

**Austin    · Beijing    · Indianapolis    · Los Angeles    · Monterrey    · Miami    · New York    · Seoul    · Taipei    · Zurich**

# EXHIBIT "3"

**CAPPELLO**
GROUP INC.
MERCHANT BANKERS

<u>Rob Deutschman, Vice Chairman</u>

Rob Deutschman currently serves as Vice Chairman of Cappello Group, Inc. (www.cappellocorp.com). Mr. Deutschman has specialized in investment and merchant banking activities for more than 25 years, with a particular emphasis on the provision of strategic advice, mergers and acquisitions, and executing private placements of institutional capital for growing public and private companies on a global basis. Mr. Deutschman's ability to deliver financing solutions to companies facing complex circumstances is enhanced by his experience as a founder, director and operator of companies and his background advising and accessing capital for companies in distressed situations. His diverse background also encompasses venture capital, law, entertainment, real estate, financial services, service industry operations, and restructurings and workouts.

Prior to joining Cappello, Mr. Deutschman was a Managing Director of Saybrook Capital Corp. where he focused on corporate finance, venture capital and defaulted/troubled municipal bond issues and related workouts and restructurings. Previously, he was a founder of Cheviot Capital Corporation, a financial advisory and investment firm specializing in bankruptcy, insolvency and distressed situations, which was sold to Houlihan, Lokey Howard & Zukin in 1988, commencing the formation of Houlihan's Financial Restructuring Group. Mr. Deutschman subsequently became a Senior Vice President and Director of Principal Investments of Houlihan's Public Finance Group.

Mr. Deutschman began his career in 1982 as a practicing attorney with Gibson, Dunn & Crutcher in Los Angeles.

Mr. Deutschman presently serves as the Vice Chairman of the Board of Directors of Enron Creditors Recovery Corp. (formerly Enron Corp.), a position he assumed upon the Company's 2004 emergence from bankruptcy; to date, in excess of $25B has been returned to the creditors of Enron. Mr. Deutschman also serves on the board of the RAND Center for Corporate Ethics and Governance, and on the board of MPG Office Trust (NYSE: MPG), the largest holder of Class A office property in downtown Los Angeles. Mr. Deutschman serves on the advisory board of numerous growing companies in need of advice on capital formation and operational matters. Mr. Deutschman formerly served as the Chairman of the Board of First Bank of Beverly Hills, F.S.B. and as a member of the Board of Directors of Beverly Hills Bancorp Inc. (NASDAQ: BHBC). Mr. Deutschman is a past member of the Santa Monica Bay Chapter of the Young Presidents' Organization.

Mr. Deutschman has been intimately involved for the past 24 years with the Water Buffalo Club (www.waterbuffaloclub.org), a Los Angeles based charitable organization dedicated to providing time and financial support to smaller children's charities while hosting events that foster well-being for underserved children in the Los Angeles community.

Mr. Deutschman earned his undergraduate degree, with honors, in political science at Haverford College (1979) and his law degree from Columbia University School of Law (1982), where he was a Harlan Fiske Stone Scholar.

# CAPPELLO
## CAPITAL CORP.

Paul Kromwyk, Senior Vice President

Paul Kromwyk has specialized in investment banking and consulting activities for over 15 years, with a particular emphasis on executing mergers & acquisitions and financing transactions for both public and private companies.  Mr. Kromwyk has worked at a senior level in investment banking in both the U.S. and Australia and has advised clients in a broad array of industries and product groups including energy and mining services, media/entertainment, technology, consumer/retail, financial institutions, private equity and equity & debt capital markets.

Prior to joining Cappello, Mr. Kromwyk was a Senior Advisor for McCafferty & Company, an investment banking boutique in Los Angeles where he advised and raised capital primarily for clients in media/entertainment and technology industries. Prior to joining McCafferty, Mr. Kromwyk was based in Sydney, Australia where he worked for Greenhill as a Vice President. While at Greenhill, Mr. Kromwyk advised Australia's leading corporations across a wide array of industries.  Notable transactions included advising Westpac Banking Corporation on its $17B merger with St.George Limited; advising private equity firm Champ Ventures on its sale of portfolio company, Amdel Holdings Ltd; and advising Mincom Limited, on its sale to US-based private equity buyer Francisco Partners.

Mr. Kromwyk began his investment banking career at Credit-Suisse in New York in the Financial Institutions Group.  Prior to Credit-Suisse, Mr. Kromwyk began his professional career with LEK Consulting, where he worked on a range of strategic advisory and financial valuation projects.

Mr. Kromwyk received an M.B.A. from the Harvard Business School. He has also completed a combined Bachelor of Commerce (Hons) and a LLB (Hons) from the University of Queensland, Australia and was a winner of the University Medal. In addition, Mr. Kromwyk has completed several professional course subjects with the Financial Services Institute of Australasia (FINSIA), including "Mergers & Acquisitions."

In his free time, Mr. Kromwyk enjoys road cycling, swimming, triathlons, mountaineering and travel. Mr. Kromwyk is a board member of the Harvard Business School Association of California and the Los Angeles chapter of Advance and is active in the Los Angeles Australian community.

1 0 0   W i l s h i r e   B o u l e v a r d ,   S u i t e   1 2 0 0 ,   S a n t a   M o n i c a ,   C a l i f o r n i a   9 0 4 0 1
T e l e p h o n e   3 1 0 . 3 9 3 . 6 6 3 2   F a x   3 1 0 . 3 9 3 . 4 8 3 8

F I N R A - S I P C